## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ABDU RAFIA MUHAMMAD, | * | |
| Plaintiff, | * | |
| | | Civil Action No. RDB-20-3020 |
| v. | * | |
| CHARLES W. SCHARF, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On October 19, 2020, *pro se* Plaintiff Abdu Rafia Muhammad ("Plaintiff" or "Muhammad") filed this suit against Defendants Wells Fargo[1], Charles W. Scarf, Kathy Kraniinger, Wendy Tazilaar, Christopher Kwok, and Wells Fargo Mediation Program Administration (collectively "Defendants"), alleging that Wells Fargo created certain bank accounts without his authorization.  (ECF Nos. 1, 3, 14.)  Presently pending is Defendants' Motion to Dismiss and Motion to Substitute Proper Defendant.[2]  (ECF No. 15.)  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons stated herein, Defendants' Motion to Dismiss (ECF No. 15) shall be GRANTED and Plaintiff's Second Amended Complaint (ECF No. 14) shall be DISMISSED.

---

[1] The proper named Defendant for Plaintiff's claims is Wells Fargo Bank, N.A., which has filed the presently pending Motion to Dismiss and Motion to Substitute Proper Defendant.  Accordingly, the Court will substitute Wells Fargo Bank, N.A. as the proper Defendant instead of "Wells Fargo."  However, for ease of reference, the Court will refer to the proper Defendant Wells Fargo Bank, N.A. as Wells Fargo.

[2] Also pending is a motion filed by Plaintiff entitled "Motion for Compensatory Relief," in which Plaintiff asks the Court to "enforce plaintiffs' Order regarding our complaint filed in principle with its *prima faci* allegations against the defendants Charles W. Scharf *et al.*"  (ECF No. 4.)  Because Plaintiff's Second Amended Complaint shall be dismissed, there is no basis for Plaintiff's Motion for Compensatory Relief, and that Motion (ECF No. 4) is DENIED.

## BACKGROUND

In January of 2018, Plaintiff Muhammad received notice by mail[3] that Wells Fargo had created "millions of fraudulent savings and checking accounts on behalf of Wells Fargo clients without their consent," which Plaintiff refers to as the "Wells Fargo Unauthorized Account Fraud." (2d Am. Compl. ¶¶ 6-7, ECF No. 14.)  Muhammad alleges that news of the Wells Fargo Unauthorized Account Fraud became "widely known" in 2016 after Wells Fargo was fined $185 million by the Consumer Financial Protection Bureau and that Wells Fargo faced additional civil and criminal suits in 2018.  (*Id.*)

In fact, on May 13, 2015, Shahriar Jabbari ("Jabbari") filed a class action complaint in the United States District Court for the Northern District of California against Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively "Wells Fargo"), alleging that Wells Fargo had opened multiple accounts in his name without his knowledge or consent. *See Jabbari v. Wells Fargo & Co.*, No. No. 15-cv-02159-VC, 2017 WL 5157608, at *3 (N.D. Cal. Jul. 8, 2017).[4]  On June 24, 2015, Kaylee Heffelfinger filed another putative class action complaint asserting similar claims against the same defendants.  *See Heffelfinger v. Wells Fargo & Co.*, Case No. 3:15-cv-02942 (N.D. Cal.).  On July 30, 2015 Heffelfinger voluntarily dismissed her suit, and Jabbari and Heffelfinger consolidated their claims, filing a consolidated amended class action complaint on behalf of themselves and all others similarly situated.  *Id.*; *see also*

---

[3] While Plaintiff does not identify from whom he received this notice, he alleges that, upon receiving the notice, he filed a claim with the *Jabbari* class counsel, Keller Rohrback, LLP, who were responsible for distributing the *Jabbari* settlement notice to the settlement class.  (*See* 2d Am. Compl. ¶ 21; *see also* Notice Program, ECF No. 16-6.)

[4] "[C]ourts routinely take judicial notice of documents filed in other courts . . . to establish the fact of such litigation and related filings."  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (citations omitted); *see also* this Court's opinion in *In re Under Armour Securities Litig.*, 409 F. Supp. 3d 446, 456 (D. Md. 2019).

(*Jabbari* Consolidated Amended Complaint, ECF No. 16-1.) That complaint generally alleged that Wells Fargo created accounts that its customers did not authorize, and the plaintiffs sought to represent a putative class defined as "[a]ll persons in the United States for whom Wells Fargo or a Wells Fargo employee opened a financial account or product in the person's name without that person's lawfully-obtained authorization." (ECF No. 16-1 ¶ 83.)

On June 14, 2017, Wells Fargo and the plaintiffs agreed to settle. The plaintiffs entered into the Amended Stipulation and Agreement of Class Action Settlement and Release ("Settlement Agreement") on behalf of themselves and the "Settlement Class," including all persons for whom Wells Fargo opened an unauthorized account. (*See* Settlement Agreement, ECF No. 16-2.) The Settlement Agreement defined the "Settlement Class" as:

> all Persons for whom Wells Fargo or Wells Fargo's current or former subsidiaries, affiliates, principals, officers, directors, or employees opened an Unauthorized Account or submitted an Unauthorized Application, or who obtained Identity Theft Protection Services from Wells Fargo during the period May 1, 2002 to April 20, 2017, inclusive, with the exception of (i) Defendants' officers, directors, and employees; (ii) the judicial officers and associated court staff assigned to this case, and the immediate family members of such officers and staff; and (iii) Persons who timely and properly opt-out of the Settlement Class pursuant to the procedures set out [herein]…

(*Id.* at 15-16, § 2.53.) A "Settlement Class Member" was defined as "all Persons who are members of the Settlement Class and who do not timely and properly opt-out of the Settlement Class pursuant to the procedures set out in Paragraph 12 of this Stipulation. (*Id.* at 16, § 2.54.) The Settlement Agreement stated that it was "intended to fully, finally and forever resolve, discharge and settle the Released Claims . . . on the terms set forth herein." (*Id.* at 2.) Those "Released Claims" were defined as:

> to the fullest extent permitted by law or equity, any and all claims and causes of action of every nature and description, known and Unknown, whether arising

under federal, state, common or foreign law, or any other law, rule, or regulation, that were asserted, or that arise out of the identical factual predicate as the claims that were asserted, in the Action, commensurate with the res judicata effect at the conclusion of the litigation.  For the avoidance of doubt, the Released Claims encompass claims and causes of action of every nature and description arising from enrollment in the Identity Theft Protection Services by members of the Settlement Class.  Released Claims do not include claims insofar as they pertain to an account, product, or service (other than that "Unauthorized Accounts" or Unauthorized Applications") for which unauthorized fees were charged to Settlement Class Members.

(*Id.* at 14-15, § 2.50.)  In the final section of the Settlement Agreement relevant to this case, the

Settlement Class Members agreed to release any Released Claims made against any "Released

Parties," defined under the agreement as:

> Pursuant to the Judgment, upon the Effective Date, Named Plaintiffs and each of the Settlement Class Members, on behalf of themselves and any of their personal representatives, spouses, domestic partners, trustees, heirs, executors, administrators, predecessors, successors, or assigns shall be deemed by operation of law to have fully, finally and forever released, relinquished, waived, discharged and dismissed each and every Released Claim, and covenant not to pursue any or all Released Claims against any Released Party, whether directly or indirectly, all Released Claims against any Released Party, whether on their own behalf or otherwise….

(*Id.* at 21-22, § 5.2.)

In accordance with the notice provisions of the settlement agreement, Wells Fargo sent

out notice of the settlement to the settlement class members for members to either opt out or

be bound by the settlement.  (Notice Program, ECF No. 16-6.)  Notice of a proposed

settlement must inform class members of the following: (1) the nature of the pending litigation;

(2) the general terms of the proposed settlement; (3) that complete information is available

from the court files; and (4) that any class member may appear and be heard at the fairness

hearing.  *See* 4 Newburg on Class Actions § 8.32 (4th ed.2002).  The form of notice is "adequate

if it may be understood by the average class member." *Id.* § 11.53. Under Rule 23(c)(2)(B), this Court must "direct to class members the best notice practicable under the circumstances." *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

As noted above, Plaintiff Muhammad alleges he received notice of the *Jabbari* settlement in January of 2018.  (2d Am. Compl. ¶ 7.)  Plaintiff alleges he proceeded to investigate whether any of his accounts were opened without his authorization, and Wells Fargo provided him with the requested information.  (*Id.* ¶¶ 8-18.)  Plaintiff alleges that, based on the information provided by Wells Fargo, an account was created in his name without his authorization.  (*Id.* ¶¶ 19-20.)  Accordingly, Plaintiff asserts he filed a claim pursuant to the *Jabbari* settlement procedures "within the time frame allowed sometime before July of 2018." (*Id.* ¶ 21.)  Meanwhile, in June of 2018, the United States District Court for the Northern District of California entered a Final Order resolving and releasing all claims arising from Well Fargo's alleged creation of accounts without customer authorization.  *See Jabbari v. Wells Fargo & Co.,* No. 15-cv-02159-VC, 2018 WL 11024841 (N.D. Cal. June 14, 2018).  The final paragraph of that Final Order stated, "[w]ithout affecting the finality of this Judgment, the Court reserves jurisdiction over the Class Representatives, the Settlement Class, and Defendants as to all matters concerning the administration, consummation, and enforcement of the Settlement Agreement." *Id.* at *7.

Plaintiff, however, continued to pursue various other avenues to demand compensation for the alleged account fraud, including, *inter alia*, sending a "Demand Letter" to counsel for the *Jabbari* class, Keller Rohrback LLP, requesting $3,000,000 and filing two additional claims through the *Jabbari* settlement procedures, each requesting $3,000,000.  (*Id.*

¶¶ 21-29.)   Plaintiff also filed a complaint with the Consumer Financial Protection Bureau ("CFPB"), acknowledging the *Jabbari* settlement.  (*Id.* ¶ 30.)   Wells Fargo responded to Plaintiff's CFPB complaint and provided him a $500 customer appreciation check.  (*Id.* ¶¶ 30-35.)   In addition, on July 28, 2020 Wells Fargo and Plaintiff engaged in mediation with the assistance of a JAMS mediator, Christopher Kwok, whom Plaintiff alleges was "not neutral." (*Id.* ¶ 40.)

This suit followed on October 19, 2020 and Plaintiff filed his Second Amended Complaint on February 1, 2021.  (ECF Nos. 1, 14.)  Defendants filed the presently pending Motion to Dismiss on February 9, 2021.  (ECF No. 15.)

## STANDARD OF REVIEW

This Court is mindful of its obligation to liberally construe the pleadings of pro se litigants.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Nonetheless, liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim, *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990), or "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  In making this determination, this Court "must hold the pro se complaint to less stringent standards than pleadings drafted by attorneys and must read the complaint liberally."  *White v. White*, 886 F. 2d 721, 722-23 (4th Cir. 1989).

Rule 12 (b)(1) of the Federal Rules of Civil Procedure permits a defendant to challenge the court's subject matter jurisdiction over the plaintiff's suit.  Under Rule 12(b)(1), the plaintiff bears the burden of proving, by preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. E. W. Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015).  "A

defendant may challenge subject-matter jurisdiction in one of two ways: facially or factually."

*Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017).  A facial challenge involves the allegation

"that a complaint simply fails to allege facts upon which subject matter jurisdiction can be

based." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697

F.2d 1213, 1219 (4th Cir. 1982)).  Accordingly, the plaintiff is "afforded the same procedural

protection as she would receive under a Rule 12(b)(6) consideration," wherein "the facts

alleged in the complaint are taken as true," and the defendant's challenge "must be denied if

the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.*

By contrast, in a factual challenge, the defendant argues "that the jurisdictional

allegations of the complaint [are] not true," providing the trial court the discretion to "go

beyond the allegations of the complaint and in an evidentiary hearing determine if there are

facts to support the jurisdictional allegations." *Id.* (first alteration in original) (quoting *Adams*,

697 F.2d at 1219). Thus, with a factual challenge, "the presumption of truthfulness normally

accorded a complaint's allegations does not apply."  *Id.*  The Court should only grant a Rule

12(b)(1) motion based on a factual challenge to subject matter jurisdiction if the facts are not

in dispute and the moving party is entitled to prevail as a matter of law. *See Nat'l Fed'n of the*

*Blind v. U.S. Dep't of Educ.*, 407 F. Supp. 3d 524, 530 (D. Md. 2019) (internal citations omitted).

For the reasons that follow, the Court treats Defendants' Motion as a facial and not a factual

challenge.  Accordingly, it will "accept as true all material allegations of the complaint and

construe the complaint in favor of the complaining party." *See Deal v. Mercer Cnty. Bd. of Educ.*,

911 F.3d 183, 187 (4th Cir. 2018).

## ANALYSIS

Even liberally construing Plaintiff's Second Amended Complaint, the Court finds there is simply no basis for it to exercise its jurisdiction over Plaintiff's claims.[5]  Plaintiff's Second Amended Complaint seeks $11,550,000 based on Wells Fargo's alleged creation of multiple bank accounts in his name without his authorization.  (2d Am. Compl., ECF No. 14.) However, as detailed above, in June of 2018, the United States District Court for the Northern District of California entered a Final Order resolving and releasing all claims arising from Well Fargo's alleged creation of accounts without customer authorization ("the *Jabbari* Settlement"). *See Jabbari v. Wells Fargo & Co.*, No. 15-cv-02159-VC, 2018 WL 11024841 (N.D. Cal. June 14, 2018).

As alleged in Plaintiff's Second Amended Complaint, Plaintiff had actual notice of the *Jabbari* Settlement and did not opt out, instead filing several claims with the *Jabbari* class counsel.  (2d Am. Compl. ¶¶ 7-21.)  Indeed, there is no question that both Plaintiff Muhammad and Wells Fargo were parties to the settlement agreement.  As such, Plaintiff's claims lie exclusively under the jurisdiction of the United States District Court for the Northern District of California, pursuant to the Final Order in the *Jabbari* case providing that that "Court reserves jurisdiction over the Class Representatives, the Settlement Class, and Defendants as to all matters concerning the administration, consummation, and enforcement of the Settlement Agreement." *Id.* at *7.  This Court, therefore, lacks subject matter jurisdiction to decide this case, as the United States District Court for the Northern District of California retains

---

[5] Defendants also seek dismissal for failure to state a claim under Rule 12(b)(6), in addition to *res judicata* grounds.  Because this Court lacks jurisdiction over Plaintiff's claims, the Court need not address these additional arguments for dismissal.

exclusive jurisdiction over the released claims and parties in *Jabbari*. Accordingly, Defendants'

Motion to Dismiss (ECF No. 16) is GRANTED.

**CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Compensatory Relief (ECF No. 4)

is DENIED; Defendants' Motion to Dismiss and Motion to Substitute Proper Defendant

(ECF No. 16) is GRANTED, and Plaintiff's Second Amended Complaint (ECF No. 14) is

DISMISSED.

A separate Order follows.

Dated: March 30, 2021

_____/s/_____
Richard D. Bennett
United States District Judge